UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Charles Walen, an individual; and Paul Henderson, an individual.<br><br>Plaintiffs,<br><br>vs.<br><br>DOUG BURGUM, in his official capacity as Governor of the State of North Dakota; ALVIN JAEGER in his official Capacity as Secretary of State of the State of North Dakota,<br><br>Defendants. | CASE NO:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs, Charles Walen and Paul Henderson, for their Complaint for Declaratory and Injunctive Relief against the Defendants, state and allege as follows:

## NATURE OF THE ACTION

[1]  This is an action for declaratory and injunctive relief against the implementation and use of the newly enacted legislative redistricting plan creating two new Subdistricts passed by the North Dakota Legislative Assembly and signed by Governor Doug Burgum on November 11, 2021.

[2]  At issue in this action is the Legislative Assembly's enactment of a new statewide legislative district map, which for the first time in North Dakota's history, includes two Subdistricts located in Districts 4 and 9 respectively. The Subdistricts intentionally include the boundaries of the Forth Berthold and Turtle Mountain Indian Reservations.

[3]     The Legislative Assembly created the Subdistricts solely on the basis of race and for the purported purpose of complying with the Voting Rights Act of 1965.

[4]     The creation of Subdistricts in Districts 4 and 9 was racial gerrymandering for which race was the predominant factor.

[5]     The Legislative Assembly made no statistical analysis or inquiry regarding voting history or racial voting patterns in Districts 4 and 9 that would justify the use of race as a predominant factor in its creation of the Subdistricts. Therefore, the Legislative Assembly did not have a compelling state interest for creating the Subdistricts.

[6]     The Subdistricts cannot pass constitutional muster because they were drawn with race as the predominant factor and without a compelling justification or narrow tailoring.

[7]     Plaintiffs seek a declaration that the challenged Subdistricts are invalid and an injunction prohibiting the Defendants from calling, holding, supervising, or taking any action with respect to legislative elections based on the challenged Subdistricts as they currently stand.

## JURISDICTION AND VENUE

[8]     This Court has original jurisdiction over this action pursuant to Article III of the United States Constitution and 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

[9]     This suit is authorized by 42 U.S.C. §§ 1983 and 1988(a).

[10]    Venue is proper under 28 U.S.C. § 1391(b).

## PARTIES

[11]   Plaintiff Charles Walen is a United States citizen and resident of District 4. As a resident of District 4, Mr. Walen intends to vote in 2022 and future elections.

[12]   Plaintiff Paul Henderson is a United States Citizen and resident of District 9. As a resident of District 9, Mr. Henderson intends to vote in 2022 and future elections.

[13]   Defendant Doug Burgum is sued in his official capacity as the Governor of North Dakota. As the Governor of North Dakota, Governor Burgum is the head of the Executive Branch in the State, which includes the North Dakota Secretary of State's office. Governor Burgum issued Executive Order 2021-17, which convened a special session of the Legislative Assembly for the purposes of "redistricting of government." Governor Burgum signed into law House Bill 1504, which provided for a complete redistricting of North Dakota's legislative districts.

[14]   Defendant Alvin Jaeger is sued in his official capacity as the Secretary of State of North Dakota. As Secretary of State, he is the supervisor of elections in North Dakota. Secretary Jaeger supervises the conduct of elections and is responsible for publishing a map of all legislative districts in the State.

## LEGAL BACKGROUND

[15]   The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall...deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amdt. 14, §1.

[16]   The United States Supreme Court has found that the central purpose of the Fourteenth Amendment is to "prevent the State from purposefully discriminating between individuals on the basis of race." Shaw v. Reno, 509 U.S. 630, 642 (1993).

[17]    Racial gerrymandering occurs where a state intentionally assigns citizens to a legislative district on the basis of race. Abbot v. Perez, 138 S. Ct. 2305, 2314 (2018).

[18]    Because racial gerrymandering of legislative districts creates inherent racial classifications, it is limited by the Fourteenth Amendment. Cooper v. Harris, 137 S. Ct. 1455, 1463 (2017).

[19]    When redistricting a legislative map, if racial considerations predominated over other redistricting principles, the burden is on the state to demonstrate the design of the legislative district is narrowly tailored to serve a compelling state interest. Id. at 1464.

[20]    Compliance with Section 2 of the Voting Rights Act of 1965 may be a compelling state interest which justifies the drawing of district boundaries on the basis of race. Alabama Legislative Black Caucus v. Alabama, 575 U.S. 254, 278 (2015).

[21]    In order for a state to demonstrate a racial gerrymander is justified under Section 2 of the Voting Rights Act, it must demonstrate its decision to draw district boundaries based on race meets the preconditions set forth by the Court in Thornburg v. Gingles, 478 U.S. 30 (1986).

[22]    In Gingles, the Court laid out three preconditions which are required to succeed on a Voting Rights Act § 2 claim: (1) the minority Group must be sufficiently large and geographically compact to constitute a majority in some reasonably configured district; (2) the minority group must be politically cohesive; and (3) the district's white majority must vote sufficiently as a "bloc" to usually defeat the minority's preferred candidate. 478 U.S. at 50-51.

[23]    If a state cannot demonstrate its racial gerrymandering meets the Gingles preconditions, the districts in question are not narrowly tailored to achieve a compelling

4

state interest, and are thus a violation of the Fourteenth Amendment of the United State Constitution. Cooper, 137 S. Ct. at 1470.

## FACTUAL ALLEGATIONS

[24]  Article IV, Section 2 of the Constitution of North Dakota requires the North Dakota Legislative Assembly to redraw the district boundaries of each legislative district following the public release of each decennial census.

[25]  Article IV, Section 2 of the Constitution of North Dakota further provides that "[t]he Legislative Assembly shall guarantee, as nearly as practicable, that every elector is equal to every other elector in the state in the power to cast ballots for legislative candidates."

[26]  During the 67th Legislative Session, the North Dakota Legislative Assembly passed House Bill 1397 which was "to establish a legislative management redistricting committee" and "to provide for the implementation of a legislative redistricting plan."

[27]  On October 29, 2021, North Dakota Governor Doug Burgum issued Executive Order 2021-17, which convened a special session of the Legislative Assembly for purposes of "redistricting of government."

[28]  A Joint Redistricting Committee was formed in order to develop new legislative district maps.

[29]  In the process of developing new legislative district maps, the Joint Redistricting Committee discussed subdividing Districts 4 and 9, for purposes of avoiding a lawsuit under § 2 of the Voting Rights Act. The Committee focused on Districts 4 and 9 because they contain the boundaries of the Forth Berthold and Turtle Mountain Indian Reservations, respectively.

[30] The Committee was clear that race was the predominant factor in its decision to create legislative Subdistricts in Districts 4 and 9.

[31] In a Committee session which took place on September 28, 2021, a Committee member remarked, "I have issues with subdivisions and dividing them based on race."[1] The Committee Vice Chairman responded: "That's a reasonable position to take. I'm not a big fan of it, but either we do it or someone does it for us."[2]

[32] Redistricting Committee meeting minutes for September 28, 2021, state: "[s]ome committee members express discomfort with drawing subdistrict boundaries based on race."

[33] The Committee made no inquiry or analysis regarding the voting history or racial voting patterns in Districts 4 and 9.

[34] The Committee failed to statistically analyze or establish that the Native American populations in Districts 4 and 9 are politically cohesive in their voting patterns.

[35] The Committee failed to present or provide any evidence which demonstrated that the white majority in Districts 4 and 9 vote sufficiently as a "bloc" to usually defeat the minority's preferred candidate.

[36] The Committee failed to make a meaningful legislative inquiry into whether its decision to create Subdistricts on the basis of race met the Gingles preconditions.

[37] On September 29, 2021, the Committee recommended a "do pass" on the newly drawn redistricting plans, which included Subdistricts in Districts 4 and 9.

[38] On November 10, 2021, a debate was held on the floor of the House of

---

[1] *Sep. 8 Hearing of the Joint Redistricting Committee, 67th Leg., 1st Spec. Sess.* 1:23:50 (N.D. Sep. 2021), https://video.legis.nd.gov/en/PowerBrowser/PowerBrowserV2/20210910/-1/22601.
[2] Sep. 8 Hearing of the Joint Redistricting Committee, 67th Leg., 1st Spec. Sess. 1:24:05 (N.D. Sep. 2021), https://video.legis.nd.gov/en/PowerBrowser/PowerBrowserV2/20210910/-1/22601.

Representatives regarding the redistricting plan. Again, proponents of the Bill indicated that race was the predominant factor in the Committee's decision to create the Subdistricts.

[39]   On November 10, 2021, the Legislative Assembly passed House Bill 1504, which provided for a complete redistricting of North Dakota's legislative districts. The Bill was signed into law by Governor Burgum on November 11, 2021.

[40]   Traditionally, the North Dakota House of Representatives consists of 94 members, with two Representatives being elected at-large in each district. However, under the redistricting plan enacted by the Legislative Assembly, Districts 4 and 9 are now subdivided into Districts 4A and 4B, and 9A and 9B respectively. Under this plan, Representatives from Districts 4 and 9, are no longer elected at-large, but are instead elected only by citizens in their respective Subdistrict.

[41]   The creation of these Subdistricts deprives the citizens of Districts 4 and 9 from multi-member representation in the House of Representatives, as each citizen is now only represented by a single Representative elected in the Subdistrict in which they reside. All other North Dakota citizens retain the benefit of multi-member representation in the House of Representatives.

[42]   The creation of Subdistricts in Districts 4 and 9 is a racial gerrymander for which race was the predominant factor, and for which the Legislative Assembly had no compelling state interest.

[43]   As a result of the Legislative Assembly's racial gerrymander, citizens of Districts 4 and 9 will be denied equal representation under the law, as they will only be represented by one State Representative, while all other North Dakota citizens will be

represented by two State Representatives.

## CAUSE OF ACTION

### Violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution

[44]   Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations in paragraphs 1 - 43 above.

[45]   The Fourteenth Amendment of the United States Constitution provides in relevant part: "[n]o State shall…deny to any person within its jurisdiction the equal protection of the laws."

[46]   The Legislative Assembly's creation of Subdistricts in Districts 4 and 9 constitutes racial gerrymandering, as it assigns citizens to specific legislative districts predominantly on the basis of their race.

[47]   Racial considerations predominated over other traditional redistricting principles in creating the challenged Subdistricts.

[48]   The Legislative Assembly's plan for the creation the challenged Subdistricts is not narrowly tailored to achieve a compelling state interest.

[49]   Accordingly, the subdistricting of Districts 4 and 9 into Subdistricts 4A and 4B, and 9A and 9B, violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

[50]   As a result of the newly created Subdistricts in Districts 4 and 9, Plaintiffs are now deprived of multi-member representation in the North Dakota House of Representatives.

[51]   Plaintiffs have no adequate remedy at law other than the judicial relief sought here. The failure to temporarily and permanently enjoin the conduct of elections

based on the challenged Subdistricts will irreparably harm Plaintiffs by violating their constitutional rights

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court:

1. Declare that Subdistricts 4A and 4B, and 9A and 9B are racial gerrymanders in violation of the Equal Protection Clause of the Fourteenth Amendment;

2. Issue a permanent injunction enjoining Defendants from enforcing or giving any effect to the boundaries of the challenged Subdistricts as drawn in the 2021 plan, including an injunction barring Defendants from conducting any future elections for the North Dakota Legislative Assembly based on the challenged Subdistricts;

3. Grant such other relief the Court deems necessary or appropriate, including but not limited to an award of Plaintiffs' attorneys fees and reasonable costs pursuant to 42 U.S.C. § 1988.

Respectfully submitted this 16th day of February, 2022.

EVENSON SANDERSON PC
Attorneys for Plaintiffs
1100 College Drive, Suite 5
Bismarck, ND 58501
Telephone: 701-751-1243

By: */s/ Paul R. Sanderson*
Paul R. Sanderson (ID# 05830)
psanderson@esattorneys.com
Ryan J. Joyce (ID# 09549)
rjoyce@esattorneys.com

Robert W. Harms
Attorney for Plaintiffs
815 N. Mandan St.
Bismarck, ND 58501
Telephone: 701-255-2841

By: */s/ Robert W. Harms*
Robert W. Harms (ID# 03666)
robert@harmsgroup.net