# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
### EASTERN DIVISION

Charles Walen, an individual; and Paul
Henderson, an individual,

          Plaintiffs,

v.

DOUG BURGUM, in his official capacity
as Governor of the State of North Dakota;
ALVIN JAEGER, in his official capacity as
Secretary of State of North Dakota,

          Defendants,

     and

The Mandan, Hidatsa and Arikara Nation;
Lisa DeVille, an individual; and
Cesareo Alvarez, Jr., an individual.

          Proposed    Defendants-
Intervenors.

Case No. 1:22-cv-00031-PDW-CRH

**MOTION TO INTERVENE**

# TABLE OF CONTENTS

MOTION TO INTERVENE – EXPEDITED RULING REQUESTED ................................... 1

I.    FACTUAL BACKGROUND ........................................................................................... 2

    A.  The Mandan, Hidatsa and Arikara Nation is a federally recognized Indian Tribe responsible for protecting the rights and interests of its members. ......... 2

    B.  Lisa DeVille and Cesar Alvarez are enrolled members of MHA living within one of the subdistricts challenged in the instant litigation. ................................ 2

    C.  During North Dakota's legislative redistricting process, MHA Nation advocated for a redistricting plan that would protect its members' right to an equal opportunity to elect their candidate of choice. ............................................ 3

    D.  Plaintiffs Charles Walen's and Paul Henderson's lawsuit challenges SD 4's division into House subdistricts, jeopardizing MHA voters' opportunity to elect their candidate of choice. ................................................................................. 6

II.    ARGUMENT ................................................................................................................. 6

    A.  Tribal Defendants are entitled to intervention as a matter of right. ................... 6

        1.  Tribal Defendants have standing to intervene in this case. ............................ 7

        2.  Tribal Defendants' motion for intervention is timely. ..................................... 9

        3.  Tribal Defendants have direct and recognized interests in the present litigation. ................................................................................................................ 11

        4. Tribal Defendants' interests may, as a practical matter, be impaired by this proceeding. .......................................................................................................... 14

        5. The existing parties do not adequately represent Tribal Defendants' interests. ................................................................................................................ 14

    B. Alternatively, MHA Nation and individual Tribal Defendants meet the requirements for permissive intervention. .......................................................... 17

CONCLUSION ..................................................................................................................... 18

# TABLE OF AUTHORITIES

<u>Cases</u>

*Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad.*,
   643 F.3d 1088 (8th Cir. 2011) ............................................................... 7

*Animal Protection Inst. v. Merriam*,
   242 F.R.D. 524 (D. Minn. 2006) ........................................................... 13

*Arizona v. California*,
   460 U.S. 605 (1983) ............................................................................... 9

*Bone Shirt v. Hazeltine*,
   336 F. Supp. 2d 976 (D.S.D. 2004) ...................................................... 8

*Chiglo v. City of Preston*,
   104 F. 3d 185 (8th Cir. 1997) ........................................................ 14, 16

*Clark v. Putnam Cnty.*,
   168 F.3d 458 (11th Cir. 1999) ....................................................... 16, 17

*Curry v. Regents of Univ. of Minn.*,
   167 F.3d 420 (8th Cir. 1999) ............................................................... 11

*Jenkins v. Missouri*,
   78 F.3d 1270 (8th Cir. 1996) ............................................................... 14

*Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*,
   60 F.3d 1304 (8th Cir. 1995) ............................................................... 14

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*,
   738 F.2d 82 (8th Cir. 1984) ................................................................. 15

*Mausolf v. Babbitt*,
   85 F.3d 1295 (8th Cir. 1996) ............................................... 7, 11, 13, 15

*Mille Lacs Band of Chippewa Indians v. Minnesota*,
   989 F.2d 994 (8th Cir. 1993) ........................................................... 9, 10

*Pennsylvania v. Porter,*

    659 F.2d 306 (3d Cir. 1981) ........................................................... 9

*Planned Parenthood of Minn. v. Citizens for Cmty. Action,*

    558 F.2d 861 (8th Cir. 1977) ......................................................... 15

*Planned Parenthood v. Daugaard,*

    836 F. Supp. 2d 933 (D.S.D. 2011) ............................................... 10

*Quapaw Tribe of Okla. v. Blue Tree Corp.,*

    653 F. Supp. 2d 1166 (N.D. Okla. 2009) ......................................... 8

*Sierra Club v. Robertson,*

    960 F.2d 83 (8th Cir. 1992) ..................................................... 14, 15

*South Dakota v. Ubbelohde,*

    330 F.3d 1014 (8th Cir. 2003) ............................................. 7, 15, 16

*State Dep't of Health & Soc. Servs., Div. of Family & Youth Servs. v. Native Vill. of Curyung,*

    151 P.3d 388 (Alaska 2006) ........................................................... 8

*Thornburg v. Gingles,*

    478 U.S. 30 (1986) ......................................................................... 8

*United States v. Ritchie Special Credit Inv.,*

    620 F.3d 824 (8th Cir. 2010) ....................................................... 11

*United States v. St. Louis Metro. Sewer Dist.,*

    569 F.3d 829 (8th Cir. 2009) ....................................................... 11

*United States v. Union Elec. Co.,*

    64 F.3d 1152 (8th Cir. 1995) ................................................... 7, 11

## Statutes

Voting Rights Act, 52 U.S.C. § 10301 ....................................................... 2

THREE AFFILIATED TRIBES CONST. art. III, §§ 1-2 ..................................... 2

## Rules

Fed. R. Civ. P. 24 ..................................................................................... 6

Fed. R. Civ. P. 24(a) ............................................................................. 6, 7

Fed. R. Civ. P. 24(a)(2) ............................................................................................ 7

Fed. R. Civ. P. 24(b) ................................................................................... 7, 17, 18

Fed. R. Civ. P. 24(b)(1) ............................................................................................ 1

Other

H.B. 1397, 67th Leg., Reg. Sess. (N.D. 2021). .......................................................... 4

**MOTION TO INTERVENE – EXPEDITED RULING REQUESTED**

Pursuant to Federal Rule of Civil Procedure ("FRCP") 24(a) and (b), the Mandan, Hidatsa and Arikara Nation ("MHA" or "MHA Nation"), a federally recognized Indian Tribe, Lisa DeVille, and Cesar Alvarez (collectively, "Tribal Defendants"), respectfully move this Court to intervene as Defendants as a matter of right, under Rule 24(a)(2). In the alternative, Tribal Defendants request leave to intervene by permission under Rule 24(b)(1). Tribal Defendants seek intervention to defend Legislative District 4's ("Senate District 4," or "SD 4") subdivision into single-member House districts to create House District 4A ("HD 4A"), which encompasses all of MHA's lands and within which individual Tribal Defendants live and vote. Tribal Defendants' interests cannot be adequately represented by existing parties, and they have defenses that share with the main action common questions of law and fact. A proposed Answer in Intervention is attached to this motion.

Undersigned counsel has communicated with counsel for both above-named Defendants and for both above-named Plaintiffs.  Plaintiffs have stated no objection to this motion and Defendants have stated that they do not take a position on this motion. Counsel for Defendants stated that they do not intend to file a response to this motion. Tribal Defendants therefore request an expedited ruling on this motion to allow them to file a timely response to Plaintiffs' motion for preliminary injunction based upon the schedule previously agreed to by the Parties and adopted by this Court.

I.      **FACTUAL BACKGROUND**

   **A. The Mandan, Hidatsa and Arikara Nation is a federally recognized Indian Tribe responsible for protecting the rights and interests of its members.**

The MHA Nation, also known as the Three Affiliated Tribes of the Fort Berthold Reservation is one of five federally recognized tribes whose reservations fall wholly or partially within the state of North Dakota. 87 Fed. Reg. 4636. MHA has nearly 17,000 enrolled members. Many of these members live on the Fort Berthold Reservation and in nearby communities in western North Dakota. MHA's principal governing body consists of a six-member Tribal Business Council and a Tribal Chairman. THREE AFFILIATED TRIBES CONST. art. III, §§ 1-2. MHA Nation is responsible for promoting and protecting the interests of its members as well its own interests as a sovereign government. *Id.* at art. VI, § 5.

To ensure its members have an equal opportunity to elect their candidates of choice to the North Dakota legislature, the MHA Nation expended considerable time and effort during the redistricting process to advocate for legislative maps that comply with Section 2 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10301. These efforts, whose success is endangered by the current lawsuit, are further detailed below.

   **B. Lisa DeVille and Cesar Alvarez are enrolled members of MHA living within one of the subdistricts challenged in the instant litigation.**

Lisa DeVille is Native American and a citizen of MHA Nation. Ms. DeVille resides on the Fort Berthold Reservation in the town of Mandaree. Her residence is within State Senate District 4 and House District 4A. Ms. DeVille has lived at her residence for 12

2

years, has lived on the Fort Berthold Reservation for 47 years, and is a regular voter in North Dakota elections. Ms. DeVille intends to vote in 2022 and future elections.

Cesar Alvarez is Native American and a citizen of MHA Nation. Mr. Alvarez resides on the Fort Berthold Reservation.  His residence is within State Senate District 4 and House District 4A. Mr. Alvarez has lived at his current residence for the last seven years, has lived on the Fort Berthold Reservation for twenty-five years total, and is a regular voter in North Dakota elections. Mr. Alvarez intends to vote in 2022 and future elections.

North Dakota's legislative redistricting plan divides SD 4 into two single-member districts.  This division affords Ms. DeVille, Mr. Alvarez, and their fellow Native American voters in HD 4A, which is comprised of a majority Native voting age population, an opportunity to elect their candidate of choice to one State House seat. Without subdistricts, both of SD 4's representatives in the State House would be elected at-large by a majority non-Native population and Native Americans' voting power would be overwhelmed by white bloc voting against the Native candidate of choice. Thus, SD 4's subdistricts are necessary to afford Ms. DeVille, Mr. Alvarez, and other Native voters within HD 4A an undiluted vote and to comply with Section 2 of the Voting Rights Act.

### C. During North Dakota's legislative redistricting process, MHA Nation advocated for a redistricting plan that would protect its members' right to an equal opportunity to elect their candidate of choice.

North Dakota's legislative redistricting process is controlled by a legislative subcommittee called the Legislative Council Redistricting Committee (the "Redistricting

Committee"). H.B. 1397, 67th Leg., Reg. Sess. (N.D. 2021). The Redistricting Committee convened in August 2021 to reapportion North Dakota's legislative districts in light of the 2020 census. The Redistricting Committee developed a draft redistricting plan. It then submitted its plan to the full Legislature for approval.

   As part of this process, the Redistricting Committee held hearings during which members of the public could provide in-person testimony about how they believed the new maps should be drawn. Native organizations and tribal leaders asked the Redistricting Committee to hold hearings on or near reservations so that tribal members could also provide testimony. These requests were denied. In the end, all but one of the hearings were held in Bismarck, which is a several-hour drive from most reservation communities in North Dakota. The other hearing was held on September 8, 2021 in Fargo, which is also a several-hour drive from most reservation communities.

   This redistricting cycle was of particular importance to MHA, because 2020 Census showed that Fort Berthold's population had grown to that of an ideally-sized subdistrict.  If such a subdistrict were to be drawn encompassing the reservation, it would preserve the MHA Nation as a community of interest and contain a majority Native voting age population. MHA and several of its Tribal members recognized that such a subdistrict would afford MHA members a chance to elect their preferred State House representative. MHA thus advocated persistently for a fair legislative map that included such a subdistrict within SD 4.

   On August 31, 2021, a separate legislative subcommittee called the Tribal and State Relations Committee held a meeting in New Town, North Dakota, which is within the

MHA Reservation. Although the Committee had not included redistricting on its agenda, MHA Chairman Mark Fox used this occasion to ask the Committee members to divide SD 4 into subdistricts so that MHA members might have the opportunity to elect a candidate who would be attentive to and share in Tribal members' concerns. Four other members of MHA Nation also testified in support of subdistricts at this meeting, including Ms. DeVille.

Chairman Fox continued to urge North Dakota lawmakers to adopt a majority-Native subdistrict encompassing the Fort Berthold reservation at the Redistricting Committee's September 23 hearing, in written testimony accompanying his September 23 testimony, and in a letter to the Redistricting Committee on September 27. Ms. DeVille also provided testimony to the Committee on September 28 reiterating her support for such a subdistrict in legislative district 4.

After several months of hearings and deliberation, the Redistricting Committee chose a draft plan to submit to the full Legislature. The plan had 47 state legislative districts and divided legislative districts 4 and 9 into two single-member state house subdistricts each.  MHA's request for subdistricts in SD 4 had been honored, and HD 4A contained the Fort Berthold reservation and had a majority Native voting age population in compliance with the Voting Rights Act.

On November 8, 2021, the North Dakota State Legislature adopted the final map, which maintained the two single-member house subdistricts in legislative district 4, including subdistrict 4A. Governor Burgum signed the map into law as HB 1504 on November 11, 2021.

**D. Plaintiffs Charles Walen's and Paul Henderson's lawsuit challenges SD 4's division into House subdistricts, jeopardizing MHA voters' opportunity to elect their candidate of choice.**

On February 16, 2022, Plaintiffs Charles Walen and Paul Henderson brought suit challenging North Dakota's newly adopted redistricting plan. *Walen v. Burgum*, No. 1:22-cv-00031-CRH (D.N.D. Feb. 16, 2022). Mr. Walen and Mr. Henderson object to the Legislature's creation of subdistricts in SD 4 on the grounds that it constitutes racial gerrymandering in violation of the Fourteenth Amendment. 1:22-cv-00031-CRH, Dkt. 1, ¶¶ 3-6. The relief they seek – elimination of SD 4's subdistricts – would, if granted, deprive Native voters like Ms. DeVille, Mr. Alvarez, and the other members of the MHA Nation who reside on the Fort Berthold reservation of their opportunity to elect their candidate of choice to the State House.

## II.   ARGUMENT

### A. Tribal Defendants are entitled to intervention as a matter of right.

Intervention as of right is governed by FRCP 24(a), which provides in relevant part:

> On timely motion, the court must permit anyone to intervene who:
> . . .
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24.

Before a court may reach the question of whether a potential intervenor meets the requirements of Rule 24(a), it must first determine that the applicant has Article III

standing. *Mausolf v. Babbitt*, 85 F.3d 1295, 1300 (8th Cir. 1996). Once standing is established, Rule 24(a)(2) requires that an applicant demonstrate that: (1) its motion is timely; (2) it has a recognized interest in the subject matter of the litigation; (3) that interest might be impaired by the disposition of the litigation; and (4) its interest is not adequately represented by the existing parties. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1160-61 (8th Cir. 1995). If an applicant has standing and meets each of these four requirements, then it "must" be allowed to intervene. Fed. R. Civ. P. 24(a). According to Fed. R. Civ. P. 24(b), upon timely application anyone may be permitted to intervene in an action when an applicant's claim or defense and the main action have a question of law or fact in common, the court must consider whether the intervention will unduly delay or prejudice the rights of the parties.

### 1.  Tribal Defendants have standing to intervene in this case.

The Eighth Circuit requires a proposed intervenor-defendant to allege "facts showing the familiar elements of Article III standing," namely, that it would suffer a concrete, particularized injury to a legally protected interest were plaintiff's requested relief granted. *Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1092-93 (8th Cir. 2011). An intervenor's injury is sufficiently "imminent" if it is likely to occur upon the success of the plaintiffs' lawsuit. *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1024-25 (8th Cir. 2003).

Here, Plaintiffs have asked this Court to eliminate the subdistricts in legislative district 4. If this relief is granted, the geographically compact and majority-Native subdistrict 4A would be eliminated. Individual Tribal Defendants and other MHA tribal

members would be placed in an at-large district where Native Americans comprise a minority of the voting age population and where white bloc voting prevents the cohesive Native voting bloc from electing a candidate of their choice, diluting the votes of Native Americans in violation of Section 2 of the Voting Rights Act. The Supreme Court and Eighth Circuit have long presumed that individual voting-age plaintiffs who live in electoral districts alleged to violate Section 2 have suffered an injury allowing them to challenge such districts. *See, e.g.*, *Thornburg v. Gingles*, 478 U.S. 30 (1986); *Bone Shirt v. Hazeltine*, 336 F. Supp. 2d 976, 980 (D.S.D. 2004) (noting that plaintiffs are "Indians, qualified electors," tribal members, and living within the allegedly dilutive district before proceeding to the merits of their Section 2 claim).   Plaintiffs seek a remedy that would immediately inflict exactly that injury upon MHA's members, Ms. DeVille, and Mr. Alvarez.   Thus, Tribal Defendants satisfy all requirements for Article III standing as intervenor-defendants.

MHA Nation also has standing to intervene in defense of District 4's subdistricts, both as *parens patriae* and in its own right as a sovereign government. Sovereign nations, including Native American tribes, can bring actions as *parens patriae* to protect their sovereign or quasi-sovereign interests. *See, e.g., Quapaw Tribe of Okla. v. Blue Tree Corp.*, 653 F. Supp. 2d 1166, 1181 (N.D. Okla. 2009).

Courts have recognized a quasi-sovereign interest impacting a sufficient population to justify *parens patriae* standing where a sovereign seeks to protect the health and welfare of their citizens through the prevention of future violations of their statutory and constitutional rights. *See State Dep't of Health & Soc. Servs., Div. of Family & Youth*

*Servs. v. Native Vill. of Curyung*, 151 P.3d 388, 399 (Alaska 2006); *see also Pennsylvania v. Porter*, 659 F.2d 306, 314 (3d Cir. 1981). Here, MHA seeks to protect its members' statutory right to be free from vote dilution by defending North Dakota's division of SD 4 to establish one majority Native House subdistrict, as required by Section 2 of the Voting Rights Act.

For these reasons, MHA has *parens patriae* standing sufficient to protect the voting rights of its tribal citizens, as well as standing in its own right to proceed as an intervenor in this case. *See also Arizona v. California*, 460 U.S. 605, 615 (1983) (granting Tribes' motion to intervene in a dispute primarily between two states on the grounds that Indian Tribes are entitled "to take their place as independent qualified members of the modern body politic" and "Indians' participation in litigation critical to their welfare should not be discouraged.").

### 2. Tribal Defendants' motion for intervention is timely.

The motion here is timely. Timeliness is determined based on the totality of the circumstances, *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 998 (8th Cir. 1993). However, three factors "bear particular consideration" in the timeliness analysis: (1) the reason for any delay by the proposed intervenor in seeking intervention; (2) how far the litigation has progressed before the motion to intervene is filed; and (3) to what extent other parties may be prejudiced if intervention is permitted. *Id.* Here, there is no delay, as Tribal Defendants have filed their motion only 42 days after the case was initially filed. No discovery has occurred and there is no formal scheduling order in place.

The Eighth Circuit has granted intervention where significantly more time had elapsed between the filing of a complaint and the motion for intervention. In *Mille Lacs*, the Eighth Circuit found an applicant's motion timely where it was filed eighteen months after the initial complaint was filed, concluding that although "a substantial time [had] passed between the commencement of the suit and the [applicants'] motion to intervene," the parties had "not yet even exchanged discovery requests," and so existing parties were not prejudiced. 989 F.2d at 999.

Far less time has passed in this case than in *Mille Lacs* since Plaintiffs filed their complaint and the litigation is at a similar stage. The parties in the present case have stipulated to a schedule that requires Defendants to file their answer by April 22, 2022, which is 23 days after the date of this motion. Tribal Defendants have filed this motion, which includes a proposed answer, before any responsive pleadings have been filed, and well before discovery has begun. Granting the motion to intervene at this stage of the case would not delay a future trial, nor would it cause prejudice to any party.

Plaintiffs' Motion for Preliminary Injunction filed March 4, 2022 does not mean that Tribal Defendants' motion will prejudice any party or delay the proceedings. Such a motion does not constitute "progress" in the litigation rendering a motion to intervene untimely under the Eighth Circuit's *Mille Lacs* test. Nor does such a filing establish, without other significant factors not present here, that existing parties would be prejudiced by the addition of intervenors. *See, e.g., Planned Parenthood v. Daugaard*, 836 F. Supp. 2d 933, 939 (D.S.D. 2011) (finding motion to intervene timely where applicants filed their motion to intervene over a month after the action began and after the court had

10

already granted plaintiffs' motion for a preliminary injunction); *compare to United States v. Ritchie Special Credit Inv.*, 620 F.3d 824, 832 (8th Cir. 2010) (considering but ultimately rejecting as untimely a motion to intervene filed six months after a preliminary injunction had been granted, due to the "frequent and fervent litigation [proceedings]" since). Additionally, Defendants' response to the Motion for Preliminary Injunction is not due until April 7, 2022, with any reply brief not due until April 14. This Motion could be resolved in an expedited manner before the April 7 deadline, permitting State Defendants to respond to the Motion for Preliminary Injunction with the intervention in mind and affording Intervenor Defendants an opportunity to respond on the schedule already put forward by this Court without prejudicing the parties.

### 3. Tribal Defendants have direct and recognized interests in the present litigation.

Under Rule 24(a)(2), applicants must be granted intervention when they "have an interest in the subject matter of the litigation… that is 'direct,' as opposed to tangential or collateral… and 'recognized,' [meaning both] substantial and legally protectable." (citations and internal quotations omitted). *Union Elec. Co.*, 64 F.3d at 1161; *see also United States v. St. Louis Metro. Sewer Dist.*, 569 F.3d 829, 839 (8th Cir. 2009).

While this inquiry is separate from standing, the requirements to demonstrate an injury in fact for the purposes of standing closely track those necessary to show a direct and recognized interest in the subject of litigation under Rule 24(a)(2). *See Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999) *Mausolf*, 85 F.3d at 1299-1300 (8th Cir. 1996). Indeed, Tribal Defendants are aware of no instance in which a court in this Circuit

has found that would-be intervenors faced injury in fact sufficient to demonstrate standing but lacked a direct and recognized interest justifying mandatory intervention.

For the reasons outlined in Part II-A-1, *supra*, Tribal Defendants have a legally protectable interest in an undiluted right to vote under Section 2 of the Voting Rights Act. The interests of MHA's members, Ms. DeVille and Mr. Alvarez are directly implicated by this litigation, which challenges the legality of the subdistrict in which they live and vote. Indeed, Plaintiffs' requested relief would prohibit the State from giving effect to the subdistrict it was required to draw in order to comply with Section 2 of the Voting Rights Act and consequently cause a violation of Tribal Defendants' rights protected under the Voting Rights Act. Both MHA's and Ms. DeVille's active efforts to provide testimony to the Redistricting Committee and the Tribal and State Relations Committee further establish the particular importance Tribal Defendants place one ensuring that Ms. DeVille and MHA members place on ensuring their equal opportunity to elect candidates to the State House. Tribal Defendants therefore meet this requirement for mandatory intervention.

MHA Nation also satisfies this prong because, as *parens patriae*, it has an inherent interest in the general welfare of its members by ensuring its members can fully participate in electoral democracy without illegal infringement. It therefore asserts the same direct and legally protectable interests in this litigation as do Ms. DeVille, Mr. Alvarez, and all tribal members residing within HD 4A.

MHA Nation also establishes this prong because it was deeply involved in advocating for the Tribe's interests and interests of Tribal Citizens during the redistricting

process and continues to act to protect the voting rights of its citizens. Courts within the Eighth Circuit may consider a party's prior involvement in and commitment of resources to the issues implicated by a suit in determining whether this prong is met. *See Animal Protection Inst. v. Merriam*, 242 F.R.D. 524, 528 (D. Minn. 2006), citing *Mausolf*, 85 F.3d at 1302 (finding that "that a party has satisfied its minimal burden of demonstrating a significant interest, when it has a long-standing stake in the subject of litigation"). In *Mausolf*, the Eighth Circuit found that an environmental organization satisfied Rule 24(a)'s interest requirement and thus could intervene to vindicate its interest in restricting snowmobiling in a Minnesota National Park where it had "consistently demonstrated its interest in the Park's well-being…and has worked hard over the years, in various proceedings, to protect that interest." 85 F.3d at 1302.

To the extent that an intervenor's active demonstrations of interest may bolster its ability to satisfy this prong of Rule 24(a), MHA Nation and its members have made such a demonstration through their active and ultimately successful advocacy during the redistricting process, as described in Part 1-C, *supra,* and their prompt intervention in this litigation which threatens to undo these efforts. MHA has a protectable interest in a legislative map that affords its members equal and undiluted votes in future legislative elections. And the question of what a new legislative map would look like is at the heart of the instant litigation. For these reasons, MHA Nation satisfies this second prong of Rule 24(a)(2) and must be permitted to intervene.

### 4. Tribal Defendants' interests may, as a practical matter, be impaired by this proceeding.

To establish the potential impairment of an interest, an intervenor "need not show that, but for its intervention, its interest '*would* be' impaired by the operation of res judicata, collateral estoppel, or stare decisis." *Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1308 (8th Cir. 1995) (internal quotations omitted) (emphasis added). Rather, it must demonstrate "only that its interest '*may* be' so impaired." *Id*; *see also Jenkins v. Missouri*, 78 F.3d 1270, 1275 (8th Cir. 1996) (emphasis added).

Here, Tribal Defendants' interests lie in the preservation of a House subdistrict that provides Native voters in their portion of the state an equal opportunity to elect their candidate of choice to the state legislature. The voting rights of Tribal Defendants, as MHA Nation and individual Native American voters within the disputed district, will be affected by any decision rendered by the Court in this case that alters the current configuration of SD 4 and its subdistricts. Such a decision would result in the infringement of Tribal Defendants' voting rights.

### 5. The existing parties do not adequately represent Tribal Defendants' interests.

Courts "determine the adequacy of representation primarily by comparing the interests of the proposed intervenor with the interests of the current parties to the action." *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992). Courts do not lightly assume one litigant can adequately represent the interests of another, except where a special relationship (such as *parens patraie*) exists. *See, e.g., Chiglo v. City of Preston*, 104 F. 3d 185, 187 (8th Cir. 1997). Where no special relationship exists, this "criterion is easy to satisfy,

and the would-be intervenor faces a 'minimal burden' of showing that its interests are not adequately represented by the parties." *Mausolf*, 85 F.3d at 1303.

Because there is no such special relationship between MHA Nation and State Defendants (Doug Burgum and Alvin Jaeger, in their official capacities as Governor and Secretary of State of North Dakota), MHA's burden in showing that its interests are not adequately represented by existing parties is "minimal." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 738 F.2d 82, 84 (8th Cir. 1984). This minimal burden is met here. Although State Defendants and MHA will presumably both defend District 4's subdistricts, the nature and weight of their respective interests in preserving that portion of the state's redistricting plan differ. *Planned Parenthood of Minn. v. Citizens for Cmty. Action*, 558 F.2d 861, 870 (8th Cir. 1977) (intervention appropriate where the interests of proposed intervenor and current party, "while not adverse, are disparate," even though both sought same legal goal).

MHA's interest is, as explained above, in protecting the right of each tribal member living within Fort Berthold and HD 4A to an undiluted vote. State Defendants here share this interest only in that they, as North Dakota state officials, share in the State's duty to "represent the interests of all of its citizens" of whom tribal members living in the contested subdistrict here comprise a small minority. *Sierra Club*, 960 F.2d at 86. This difference alone establishes disparate interests justifying intervention.

But State Defendants' and MHA's interests diverge still further. A government's obligation to represent all of its citizens frequently requires it "to weigh competing interests and favor one interest over another." *Ubbelohde*, 330 F.3d at 1025. Decisions about

15

redistricting in particular demand such a weighing of competing, and frequently zero-sum, interests. State Defendants could adopt a litigation strategy that prioritizes the interests of other portions of the North Dakota population to the detriment of MHA Tribal members and their voting strength. *Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999) (granting Black voters intervention on the side of the county in a suit brought by white residents; finding inadequate representation because the county was responsible for representing the interests of both Black *and* white voters). MHA Nation has a unique responsibility to its members not shared by State Defendants, and so must be permitted to intervene to uphold that responsibility here. State Defendants also have "a duty to consider the expense of defending the current plan out of [government] coffers" that Tribal defendants do not. *Id.*

State Defendants do possess a *parens patriae* responsibility for individual Tribal Defendants as citizens of the state of North Dakota, and such a relationship gives rise to a presumption of adequate representation. However, an applicant for intervention may rebut this presumption by showing that "the proposed intervenor's interest is not subsumed within the general interests of the public." *Ubbelohde*, 330 F.3d at 1025. After all, when a citizen "stands to gain or lose from the litigation in a way different from the public at large, the *parens patriae* would not be expected to represent him." *Chiglo*, 104 F. 3d at 187. In this suit, individual Tribal Defendants face a risk of vote dilution that the general North Dakota public does not. State Defendants, therefore, cannot be presumed to adequately represent individual Tribal Defendants as *parens patriae*.

This disparity of interests could become even more pronounced if Defendants or the Legislature seek to settle the case by altering or eliminating the SD 4 subdistricts. This outcome is particularly concerning given the narrow margin by which the Redistricting Committee and the Legislature approved the creation of the subdistricts. *Putnam Cnty.,* 168 F.3d at 462 (noting elected officials' incentives to remain "politically popular and effective leaders" by "agree[ing] on a plan that would preserve their seats" but compromise the voting power of a minority group). Because State Defendants cannot adequately represent Tribal Defendants' interests, Tribal Defendants must be allowed to intervene in order to do so themselves.

### B. Alternatively, MHA Nation and individual Tribal Defendants meet the requirements for permissive intervention.

In the event this Court finds that MHA and individual Tribal Defendants have not established the requirements for intervention as of right, they respectfully request leave of this Court for permissive intervention. "Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id*.

Tribal Defendants seek to intervene in this case for the purpose of addressing the legal and factual issues raised by the Plaintiffs, specifically whether subdistrict 4A is required by the Voting Rights Act, as well as providing input into any changes to

subdistrict 4A that may result from a ruling by this Court, or by agreement between the parties. Under these circumstances, Rule 24(b)'s common question requirement is met.

The second half of the permissive intervention test looks to timeliness and prejudice to the parties. As shown above, the Tribal Defendants' motion is timely, there would be no prejudice to any party, and they bring a perspective to the litigation distinct from that of the other parties on the common questions of law and fact.

## CONCLUSION

For the reasons stated above, MHA Nation, Lisa DeVille, and Cesar Alvarez respectfully request that their *Motion for Intervention* be granted.


Respectfully submitted this 30th day of March, 2022.

18

/s/ Michael S. Carter

Michael S. Carter
OK No. 31961
carter@narf.org
Matthew Campbell
NM No. 138207, CO No. 40808
mcampbell@narf.org
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80301
Telephone: (303) 447-8760 (main)
Fax: (303) 443-7776
*Attorneys for Defendant-Intervenors*

Bryan Sells*
GA No. 635562
bryan@bryansellslaw.com
THE LAW OFFICE OF BRYAN L.
SELLS, LLC
Post Office Box 5493
Atlanta, GA 31107-0493
Telephone: (404) 480-4212 (voice and fax)
*Attorney for Defendant-Intervenors*

Mark P. Gaber
DC Bar No. 988077
mgaber@campaignlegal.org
Molly E. Danahy*
DC Bar No. 1643411
mdanahy@campaignlegal.org
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Ste. 400
Washington, DC 20005
Telephone: (202) 736-2200 (main)
*Attorneys for Defendant-Intervenors*

*\*Admission* pro hac vice *pending*.

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2022, the document titled MOTION TO INTERVENE was electronically filed with the Clerk of the Court by using the CM / ECF system. Participants in this case who are registered CM/ECF users will be served by the CM / ECF system.

Paul Sanderson (#05830)
Ryan Joyce (#09549)
Evenson Sanderson PC
1100 College Drive, Suite 5
Bismarck, ND 58501
psanderson@esattorneys.com
rjoyce@esattorneys.com

David R. Phillips (#06116)
Special Assistant Attorney General
300 West Century Ave
Bismarck, ND 58502
dphillips@bgwattorneys.com

Robert Harms (#03666)
815 N. Mandan St.
Bismarck, ND 58501
robert@harmsgroup.net

Matthew A. Sagsveen
Assistant Attorney General
500 North 9th Street
Bismarck, ND 585501
masagsve@nd.gov